**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Abdul Y. Islam** | : |
| **Plaintiff,** | : |
| | : Civil Action No. 09-2533 (SRC)(MAS) |
| v. | : **OPINION AND ORDER** |
| **Roy Hendricks, et al.,** | : |
| **Defendants.** | : |

**SHIPP, United States Magistrate Judge**

**I. INTRODUCTION**

This matter comes before the Court by way of Plaintiff Abdul Y. Islam's ("Plaintiff") Application for Pro Bono Counsel. (Doc. No. 7 ("Pro Bono App.").) For the reasons stated below, Plaintiff's application is GRANTED for the limited purposes set forth below.

**II. BACKGROUND**

Plaintiff is incarcerated at Essex County Jail in the City of Newark. (Comp. 4.) In his Complaint, Plaintiff asserts that he was not provided with proper medical care by the named Defendants for his medical condition upon his incarceration on or about September 4, 2008.[1] (*Id.* at 6.) Specifically, Plaintiff asserts that he arrived at Essex County Jail with a pre-existing

---

[1] The Court notes that there is a slight discrepancy regarding Plaintiff's incarceration date. In his Complaint, Plaintiff asserts that he arrived at Essex County Jail on or about September 4, 2008. However, his Application for Pro Bono Counsel stats that he has been incarcerated at same facility since August 31, 2008.

condition of prostate cancer and that despite Plaintiff's written and oral communications and complaints to the Defendants regarding same, the Defendants deliberately failed to provide Plaintiff with proper medical treatment. (*Id.*) As a result, Plaintiff asserts that he was forced to endure "severe pain," and suffers from "elevated anxiety" and "fear of death." (*Id.*) Moreover, Defendants continue to refuse "any" medical treatment, which may be aggravating his prostate cancer by causing it to metastasize. (*Id.*)

All named Defendants, except Katrina Hernandez, R.N., have filed their Answer to Plaintiff's Complaint. (Doc. Nos. 9-12.) The Answers generally assert that Plaintiff is not entitled to any legal relief and some Defendants make cross-claims for contribution and indemnification, should the Court find them liable to Plaintiff. (*See generally id.*)

The Court notes that the relief sought in Plaintiff's Complaint includes compensatory and punitive damages, along with an order that requires Defendants to provide Plaintiff with adequate medical treatment and care. (*Id.* at 7.) However, Plaintiff failed to state what laws or constitutional rights were allegedly violated as a result of Defendants' conduct. (*See id.* at 6-7.)

### III. LEGAL DISCUSSION

Under 28 U.S.C. § 1915(e)(1), this Court "may request an attorney to represent any person unable to afford counsel." In determining whether to appoint counsel, a court should consider, as a preliminary matter, whether the plaintiff's claim has some merit in fact and law. *Parham v. Johnson*, 126 F.3d 454, 457-58 (3d Cir. 1997) (appointing counsel for a prisoner who alleged that the prison physician was deliberately indifferent to his medical needs). If the court determines that the plaintiff's claim has some merit, then the court should consider the following factors:

(1) the plaintiff's ability to present his or her own case;

(2) the complexity of the legal issues;

(3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

(4) the amount a case is likely to turn on credibility determinations;

(5) whether the case will require the testimony of expert witnesses; and

(6) whether the plaintiff can attain and afford counsel on his own behalf.

*Id.* (*citing Tabron v. Grace*, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993)). The list of factors identified in *Tabron* is not exhaustive, but rather serves as a "guidepost" for district courts. *Id.* at 458. Moreover, courts must "exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Id.* (*citing Tabron, supra,* 6 F.3d at 157). Still, if a case appears to be meritorious and a majority of the aforementioned factors are satisfied, "courts should make every attempt to obtain counsel." *Id.* at 461.

An analysis of the *Tabron* factors in this case reveals that appointment of pro bono counsel is appropriate, but only for the limited purposes expressed below. First, it is this Court's belief that Plaintiff is unable to articulate his legal claims. Plaintiff's "Statement of Claims" consists of one short paragraph, failing to assert the times, dates and place of each alleged violation. (*See* Compl. 6.) Moreover, Plaintiff failed to state what legal rights were violated and did not list separate counts against the Defendants, individually or as a whole. (*See id.*) In his Pro Bono Application, Plaintiff states that pro bono counsel is necessary because his Complaint "involve[s] complex medical and legal principles requiring professional assessment and presentation." (*See* Pro. Bono. App. 3.) This Court agrees.

Second, the complexity of the legal issues underlying Plaintiff's Complaint, although not well-articulated, warrants this Court's appointment of pro bono counsel. Clearly, Plaintiff's Complaint includes tort claims, as acknowledged by Defendants' various Answers to the Complaint, which may prove difficult as Plaintiff will have to make causality arguments. (*See* Compl. 6-7, PA 1-2.) There also may be other complex legal claims not properly asserted by Plaintiff. Thus, an analysis of the first and second *Tabron* factors leans in favor of appointment of pro bono counsel for the limited purposes of: 1) drafting a proposed amended complaint asserting such claims against Defendants that the pro bono attorney believes can be brought in good faith, if any; 2) preparing a legal brief in support of the motion to amend the complaint; 3) advising and training Plaintiff on the general pretrial and trial proceedings pursuant to the Federal Rules of Civil Procedure; and 4) preparing for and attending the initial scheduling/status conference.

Regarding the third *Tabron* factor, while obtaining certain prison records, medical records and other reports may be necessary, it does not appear that Plaintiff will have any difficulty in obtaining this information or other relevant evidence, as demonstrated by the fact that Plaintiff attached several prison forms to the Complaint. (*See* Compl. PA 2-12.) Moreover, any factual investigation pertaining to Plaintiff's medical needs, medical treatment, or lack thereof, and Defendants' conduct appears to be straightforward and will require standard factual investigation channels such as interrogatories and document requests, which Plaintiff appears able to handle. Thus, the Plaintiff failed to convince this Court that he will be unable to properly pursue a factual investigation. However, because this Court finds that Plaintiff is unable to properly present his case and that the legal issues are complex in nature, this Court further finds that the appointment

of pro bono counsel for the limited purpose of advising and training Plaintiff on the general pretrial and trial proceedings pursuant to the Federal Rules of Civil Procedure, including, but not limited to: discovery requests and answers, settlement and status conferences, final pretrial order and conference, dispositive motions and any other topics or matters that pro bono counsel believes are necessary to permit Plaintiff to proceed *pro se* once appointed pro bono counsel has satisfied his obligations pursuant to the Opinion and Order.

As for credibility determination and whether this case will turn on same, this Court finds that Plaintiff's case will turn on a consideration of actual evidence from Plaintiff's medical files and prison records for an assessment of whether the medical treatment, or lack thereof, received by Plaintiff from the Defendants was appropriate and/or whether Defendants' conduct exacerbated any preexisting medical condition. As such, assessment of this fourth *Tabron* factor weighs against pro bono counsel appointment.

Next, this Court must consider whether the case will require expert testimony. Here, this Court finds that while expert testimony may be helpful in establishing that the seriousness of his medical condition warranted medical treatment and care, Plaintiff has failed to demonstrate a necessity for expert testimony that would rise to the level necessary to appoint pro bono counsel for that purpose.

As stated by the Third Circuit, "[a] medical need is 'serious" . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'. . . In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.

N.J. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979); citing *Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir. 1984)). Thus, provided that Plaintiff demonstrates that he was diagnosed with prostate cancer and/or that Defendants failure to medically treat Plaintiff resulted in other serious injury, this Court finds that expert testimony may not be necessary. (*See* Compl. 6-7.) While expert testimony may be useful for other purposes related to Plaintiff's claim, no such purposes or reasons were provided in the Complaint. Accordingly, this Court finds that Plaintiff has failed to satisfy the fifth *Tabron* factor.

Finally, this Court must assess whether Plaintiff can obtain and afford counsel on his own behalf. This factor weighs in favor of appointment of pro bono counsel, because Plaintiff is incarcerated and does not have a large source of income, if any. However, Plaintiff has not demonstrated any efforts to obtain counsel, apart from the pending Pro Bono Application, currently before this Court.

For the foregoing reasons, based on this Court's consideration of the totality of the *Tabron* factors, Plaintiff's application for appointment of pro bono counsel is granted for the limited purposes discussed within this Opinion and Order.

**ORDER**

**IT IS** on this **5th** day of **April, 2010,**

**ORDERED** that:

1. Plaintiff Abdul Y. Islam's Application for Pro Bono Counsel is granted for the limited purposes of:

a) reviewing the evidence Plaintiff has available and drafting a proposed amended complaint asserting such claims against Defendants as the pro bono attorney believes can be brought in good faith;

b) preparing a legal brief in support of the motion to amend the complaint;

c) advising and training Plaintiff on the general pretrial and trial proceedings pursuant to the Federal Rules of Civil Procedure, including, but not limited to: discovery requests and answers; settlement and status conferences; final pretrial order and conference; dispositive motions and any other topics or matters that pro bono counsel believes are necessary to permit Plaintiff to proceed *pro se* once appointed pro bono counsel has satisfied his obligations pursuant to this Opinion and Order; and

d) preparing for and attending the initial scheduling/status conference, discussed below.

If Plaintiff insists upon pursuing claims that the pro bono attorney believes should not be asserted, the pro bono attorney may file an application with this Court to withdraw from representing Plaintiff. The pro bono attorney shall have no obligation to continue representing Plaintiff after the proposed amended complaint and brief are drafted and filed and counsel has trained and advised Plaintiff on the pretrial and trial proceedings pursuant to this Order, unless he or she elects to do so.

2. Plaintiff's application for pro bono counsel for purposes that extend beyond the limited purposes specifically set forth above is denied without prejudice.

3. Carrie S. Ford of the law firm of Wilentz, Goldman and Spitzer, P.A. having agreed to appear as pro bono counsel for Plaintiff for the aforementioned purposes shall contact the Clerk's Office to enter an appearance as attorney of record within three (3) days of entry of this Order.

4. Carrie S. Ford shall provide a copy of this Order to Plaintiff within seven (7) days herein and shall further schedule a date to meet and discuss this matter with Plaintiff within a reasonable amount of time.

5. There shall be an in person initial scheduling conference and status conference before the Undersigned on **May 6, 2010** at **1:30 pm.** The parties shall also be prepared to discuss settlement. The parties shall each submit a confidential settlement letter to this Court via facsimile (973-645-4412), summarizing the status of the case and settlement positions, including offers and demands, by **April 29, 2010**.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**